IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BANKRUPTCY ESTATE OF JUDY C. ELLIOTT, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-06-65-D |
| STATE OF OKLAHOMA, *ex rel.*, THE DEPARTMENT OF CORRECTIONS, | ) ) ) | |
| Defendant. | ) ) ) | |

## O R D E R

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 95], which

Plaintiff has timely opposed.  Defendant State of Oklahoma *ex rel*. Department of Corrections

("DOC") seeks a judgment as a matter of law pursuant to Fed. R. Civ. P. 56 on claims under

Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq*., now brought by

Plaintiff Bankruptcy Estate of Judy C. Elliott, through the bankruptcy trustee, L.Win Holbrook

("Trustee").[1]  The Motion is fully briefed and at issue.[2]

This is Defendant's second summary judgment motion, authorized primarily to address

issues that arose after the first summary judgment ruling and the substitution of Plaintiff in place of

the original plaintiff, Judy C. Elliott.  However, the first issue raised by Defendant's Motion is one

that was previously available but not raised, namely, whether the undisputed facts show that

Ms. Elliott voluntarily resigned her position as a DOC nurse rather than being constructively

discharged, as alleged in the Complaint.  Facts pertinent to this issue and the applicable legal

---

[1] *The Court has previously granted summary judgment to Defendant on a claim asserted under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.  See Order 12/8/06 [Doc. No. 29].*

[2] *Defendant was recently permitted to file a supplemental exhibit [Doc. No. 106], which has been considered.*

standards are set forth in the prior summary judgment order.  *See* Order 12/8/06 [Doc. No. 29] ("Dec. 8 Order").  Only a brief summary of those facts and additional facts shown by the current record are stated below.

### A.   Statement of Material Facts

Ms. Elliott was employed by DOC as a registered nurse from March 1, 2004, to October 29, 2004.  She resigned shortly after receiving an on-the-job injury by submitting a letter of resignation that stated no reason for her decision.  Ms. Elliott filed a workers compensation claim and an EEOC charge.  The workers compensation case was tried and resulted in a decision in her favor and an award of benefits.  During the trial in June, 2005, Ms. Elliott testified that she had not worked since her resignation because, in her words, "I can't. . . . I'm not able to, you know, get around very well." Def.'s Mot. Summ. J., Ex. 10 [Doc. 95-11] at 28:22-29:3.  In August, 2005, an EEOC mediation was unsuccessful, and Ms. Elliott requested a right-to-sue notice.

On October 12, 2005, Ms. Elliott filed a voluntary petition under Chapter 7 of the Bankruptcy Code.  She listed a personal injury lawsuit as an asset in her bankruptcy schedules and listed another lawsuit against her in the statement of financial affairs; she did not list a potential action related to her employment by DOC.  On October 24, 2005, Ms. Elliott received the EEOC notice of her right to sue.  On December 7, 2005, she testified in a bankruptcy hearing that she had no "right to sue anyone for any reason" and, when questioned about claims and lawsuits by the Trustee, did not mention any claim against DOC.  *See* Def.'s Mot. Summ. J., Ex. 17, Tr. 3-4, 5-6. The same day, the Trustee filed his initial report stating the bankruptcy was a no asset case and his report of no distribution stating the estate had been fully administered.

On January 19, 2006, this case was filed by counsel who did not represent Ms. Elliott in the bankruptcy case.  On January 25, 2006, an attorney representing a third party (against whom

Ms. Elliott also had a claim) informed Ms. Elliott's counsel in this case that Ms. Elliott had filed bankruptcy without listing any potential lawsuits, that she would need to amend her bankruptcy schedules, and that "the trustee, Win Holbrook would have to authorize any action, and the proceeds would be for the benefit of her creditors." *See* Def.'s Mot. Summ. J., Ex. 19, Letter from Chuck Moss to Stan Ward.   On February 8, 2006, this information was forwarded to Ms. Elliott's bankruptcy attorney, David Hilbern.   Mr. Hilbern has testified by affidavit that he provided information and documents concerning this case to the Trustee and was advised that no amendment of the bankruptcy schedules was needed; the Trustee does not recall this conversation.   On February 9, 2006, Ms. Elliott received a bankruptcy discharge, and on July 13, 2006, a final decree was entered in the bankruptcy case.

The Court was first notified of Ms. Elliott's prior bankruptcy on February 2, 2007, when her counsel filed a "Status Report" ten days before trial, after an unsuccessful settlement conference. The filing attorney stated he was attempting "to determine the proper procedures in the bankruptcy court to facilitate the trustee's possible involvement in the upcoming trial." *See* Status Report [Doc. No. 55].   The Trustee has testified that his notes indicate he first received information about the case in a telephone call from a court employee in February, 2007.

## B.   Defendant's Motion for Summary Judgment

## 1.   Constructive Discharge

The Complaint alleges Ms. Elliott was subjected to a racially hostile work environment that resulted in her constructive discharge.   *See* Compl. [Doc. No. 1], ¶ 28.   As stated above, Defendant seeks summary judgment on the constructive discharge issue, arguing that the undisputed facts show Ms. Elliott voluntarily resigned from her DOC employment and was not constructively discharged. Defendant relies for this argument on facts and evidence favorable to its position, namely, that

Ms. Elliott was experiencing health problems and receiving treatment for her on-the-job injury at the time of her resignation and she failed to utilize administrative remedies available within DOC and the state's Merit Protection Commission for any alleged discrimination.[3]

In arguing that Ms. Elliott voluntarily decided to resign, Defendant focuses on Ms. Elliott's alleged failure to mitigate harm by taking advantage of DOC's grievance process or other alternatives to resignation.[4] Under *Pennsylvania State Police v. Suders*, 542 U.S. 129, 152 (2004), this argument addresses an affirmative defense to liability; it is not an element of an employee's constructive discharge claim. On this issue, the Court adheres to its prior determination that Defendant has not established its entitlement to a judgment as a matter of law on the constructive discharge claim based on an affirmative defense to liability under *Suders*. *See* Dec. 8 Order at 5. The question remains, however, whether the undisputed facts are sufficient to establish a constructive discharge.

Viewing the facts and evidence in the light most favorable to Plaintiff, the Court finds that the constructive discharge issue cannot be resolved as a matter of law on the record presented. The voluntariness of Ms. Elliott's resignation under a Title VII analysis depends on the objective reasonableness of her decision and a showing that the working conditions imposed by the employer were so intolerable that a reasonable person in Ms. Elliott's position would have felt compelled to

---

[3] *In opposition to this part of Defendant's Motion, Plaintiff argues that the doctrines of issue and claim preclusion bar consideration of an issue that either was or could have been decided by the Court's first summary judgment ruling. This argument is misguided. The Court's prior order was an interlocutory decision, subject to change at any time prior to the entry of a judgment. See Been v. O.K. Indus., Inc., 495 F.3d 1217, 1225 (10th Cir. 2007) ("district courts generally remain free to reconsider their earlier interlocutory orders"); see also Fye v. Oklahoma Corp. Comm'n. 516 F.3d 1217, 1224 n.2 (10th Cir. 2008) (summary judgment ruling was not a final judgment and thus motion for reconsideration invoked "the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment").*

[4] *Defendant relies on case law that addresses the voluntariness issue in other legal contexts. For example, in Parker v. Board of Regents, 981 F.2d 1159, 1162 (10th Cir. 1992), the issue presented was whether the employee had voluntarily relinquished a proper interest necessary to a § 1983 claim for denial of due process.*

resign.  *See EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 805 (10th Cir. 2007); *Tran v. Trustees of State Colleges*, 355 F.3d 1263, 1270 (10th Cir. 2004) ("we apply an objective test under which neither the employee's subjective views of the situation, nor her employer's subjective intent . . . are relevant").  The alleged constructive discharge in this case, like the one in *Suders*, can be regarded as an aggravated case of hostile work environment harassment or "a 'worse case' harassment scenario, harassment ratcheted up to the breaking point."  *Suders*, 542 U.S. at 146, 147-48.  Accepting Ms. Elliott's testimony as fully credible for summary judgment purposes, reasonable jurors could find that she was subjected to harsher working conditions than Caucasian nurses, excluded from meetings regarding work matters, subjected to racial comments and slurs, belittled by coworkers who repeatedly criticized her work, physically and verbally assaulted by a coworker who called her incompetent, assigned additional job duties when she complained, and denied training afforded to others.  *See* Dec. 8 Order at 2-3.

The Court is mindful of the Tenth Circuit's recent comments that a "plaintiff's burden in establishing constructive discharge is substantial" and cannot be met "merely by producing evidence showing that working conditions were difficult or unpleasant" or even by presenting "some evidence of discriminatory animus in the workplace." *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 980-81 (10th Cir. 2008).  Upon careful review of the summary judgment record, however, the Court concludes that Plaintiff has made a minimally sufficient showing to raise a genuine dispute as to whether Ms. Elliott's resignation may be found to constitute a constructive discharge.  In reaching this conclusion, the Court is constrained by Rule 56 to accept all reasonable inferences in Plaintiff's favor, regardless whether the Court would make the same inferences.  Where Plaintiff places racial connotations on possibly innocuous or neutral remarks, for example, the Court must accept a view with which rational jurors could agree.  In short, the Court finds this case, like *Suders*, presents

genuine issues of material fact concerning the hostile work environment constructive discharge claim. Therefore, summary judgment on Plaintiff's Title VII claims is inappropriate.[5]

## 2.     Judicial Estoppel

Defendant seeks to preclude or limit Plaintiff's recovery of damages due to Ms. Elliott's failure to disclose her claim against DOC as an asset in her bankruptcy case. Specifically, Defendant argues that Plaintiff's damages should be limited to an amount necessary to pay any creditor's claims and that the Court should prohibit payment of any money to Ms. Elliott or her attorneys due to their negligence or wrongdoing. Defendant's arguments are based solely on *Eastman v. Union Pacific R.R. Co.*, 493 F.3d 1151 (10th Cir. 2007), which Defendant contends "is directly on point for this case." *See* Def.'s Mot. Summ. J. [Doc. 95] at 18. This contention is incorrect.

In *Eastman*, the court of appeals approved the doctrine of judicial estoppel to prevent a debtor who failed to disclose a personal injury action as an asset of his Chapter 7 bankruptcy estate from pursuing the action after the omission was discovered and the bankruptcy case was reopened. The court reasoned that the debtor, who had no satisfactory reason for not disclosing his tort claim, took inconsistent positions in the bankruptcy and district courts such that allowing him to later pursue the claim created a perception that the bankruptcy court was misled, and that the debtor gained an unfair advantage over creditors by receiving the benefit of a bankruptcy discharge without full disclosure of his assets such that he should be judicially estopped from litigating the tort claim. *See Eastman*, 493 F.3d at 1159-60. Although the district court applied judicial estoppel against both the debtor and the trustee, who was granted leave to intervene after the bankruptcy case was

---

[5] *Claims of both racial discrimination and retaliation are asserted, and Ms. Elliott has previously argued that both contributed to her constructive discharge.*

reopened, the court of appeals stated that the application against the trustee "[q]uite likely . . . was inappropriate, at least to the extent [the debtor's] personal injury claims were necessary to satisfy his debts. This is because at the time of the court's decision, the trustee as the real-party-in-interest had not engaged in contradictory litigation tactics." *Id.* at 1155 n.3, *citing Parker v. Wendy's Int'l,Inc.*, 365 F.3d 1268, 1271-72 (11th Cir. 2004).

In this case, the undisclosed claim is not being pursued by the debtor, Ms. Elliott, but by the bankruptcy estate and the Trustee for the benefit of the estate and its creditors. Unless or until the Title VII action is abandoned by Plaintiff, Ms. Elliott has no standing to pursue this action or to control its prosecution and administration.[6] Defendant's argument that Ms. Elliott will likely reap a benefit from her alleged wrongdoing because creditors may not file claims in the reopened bankruptcy case has no factual basis in the summary judgment record. More importantly, however, Defendant's position would punish parties who have not taken inconsistent positions before the courts. For example, Defendant has not presented facts to show the Trustee took contradictory positions before the bankruptcy court, but he would be unable to recover the costs of administration if judicial estoppel were applied against him. The *Parker* case cited by the Tenth Circuit with approval in *Eastman* is squarely on point. There, the Eleventh Circuit held that "the doctrine of judicial estoppel was improperly invoked" against a bankruptcy estate and the trustee, who "made no false or inconsistent statement under oath in a prior proceeding and is not tainted or burdened by the debtor's misconduct." *Parker*, 365 F.3d at 1273; *see also Riazuddin v. Schindler Elevator Corp.*

---

[6] *All Ms. Elliott's pre-petition claims became property of the bankruptcy estate when her Chapter 7 petition was filed, see Stat-Tech Int'l Corp. v. Delutes (In re Stat-Tech Int'l Corp.), 47 F.3d 1054, 1057 (10th Cir. 1995); 11 U.S.C. § 541(a), and remain property of the estate until abandoned or administered, see 11 U.S.C. § 554(d). The bankruptcy trustee, as the representative of the estate, is expressly given the capacity to sue on its behalf. See 11 U.S.C. § 323; see also Barger v. City of Cartersville, 348 F.3d 1289, 1292 (11th Cir. 2003); cf. Smith v. Rockett, 522 F.3d 1080, 1081-82 (10th Cir. 2008) (Chapter 13 debtor has standing to bring claims on behalf of the estate due to differences between Chapter 7 and Chapter 13 bankruptcies).*

(*In re Riazuddin*), 363 B.R. 177, 187-88 (B.A.P. 10th Cir. 2007) (finding no basis to apply judicial estoppel against trustee even if it applied to debtors). Similarly here, the Court finds that application of judicial estoppel against Plaintiff would be inappropriate.

Perhaps recognizing a difficulty of its position, Defendant asks the Court to craft an order that would limit Plaintiff's damages to an amount claimed by creditors and that would bar any distribution of funds to Ms. Elliott. Defendant provides no legal authority for applying the doctrine of judicial estoppel in this manner. Therefore, the Court finds that Defendant has failed to show its entitlement to the summary judgment rulings sought on grounds of judicial estoppel.

**3.      Sovereign Immunity**

Defendant also contends that the doctrine of sovereign immunity prevents the Trustee from pursuing this case. Defendant argues that Title VII authorizes civil actions by employees rather than bankruptcy trustees or estates, that the Bankruptcy Code does not abrogate the state's sovereign immunity, and that Title VII's waiver of sovereign immunity for cases of intentional discrimination does not apply to this case in light of Defendant's affirmative defense to liability under *Suders*.

The law is clear that Title VII is a valid abrogation of sovereign immunity for a private enforcement action against a state agency as an employer. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976); *Crumpacker v. Kansas Dep't of Human Res.*, 338 F.3d 1163, 1169-70 (10th Cir. 2003). While acknowledging this principle, Defendant argues that it does not permit the pursuit of this action either (1) in the hands of a bankruptcy trustee rather than an "employee," as defined by Title VII, or (2) absent proof of intentional violation by state officials. Defendant admits that it lacks legal authority for its position. *See* Def.'s Reply Br. at 8 ("DOC recognizes and acknowledges that no Court has ruled precisely on the issue [of sovereign immunity] with the facts in this case.").

The Court is unpersuaded by Defendant's arguments.  First, the fact that the Title VII claims now rest in the hands of a bankruptcy trustee or estate does not change the constitutional analysis. By operation of the Bankruptcy Code, Ms. Elliott's causes of action against Defendant passed to the bankruptcy estate upon the filing of a voluntary petition, and the trustee now possesses her rights with respect to those claims, with possible exceptions not pertinent here.  *See Foster v. Hill* (*In re Foster*), 188 F.3d 1259, 1266 (10th Cir. 1999) (noting unresolved issue of whether an individual debtor's attorney-client privilege passes to the trustee).  "Congress intended the trustee to stand in the shoes of the debtor and take no greater [or lesser] rights than the debtor himself had."  *Sender v. Buchanan* (*In re Hedged-Investments Assoc., Inc.*), 84 F.3d 1281, 1285 (10th Cir. 1996).  Second, the lack of an intentional violation by a state official does not affect the analysis.  In *Crumpacker*, the court of appeals rejected an analogous argument that "Congress' authority under § 5 [of the Fourteenth Amendment] is limited to remedying *actual* constitutional violations." *Crumpacker*, 338 F.3d at 1171-72 (emphasis in original).  The court held that conduct prohibited by Title VII as interpreted by the courts falls within the reach of Congress' power to enact "prophylactic § 5 legislation" and thus states are not immune from suits alleging such conduct.  *Id*. at 1172.

**CONCLUSION**

For these reasons, Defendant's Motion for Summary Judgment [Doc. No. 95] is DENIED.

Genuine disputes of material facts preclude summary judgment on Plaintiff's Title VII claims of

racial discrimination and retaliation.

IT IS SO ORDERED this 16th day of October, 2008.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE